UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKLIN JOSE CAMPOS GONZALEZ (A-245-313-919), | No. 1:26-cv-2596 TLN CSK |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| WARDEN, CALIFORNIA CITY DETENTION FACILITY, et al., | |
| Respondents. | |

Petitioner Franklin Jose Campos Gonzalez (A-245-313-919), a native and citizen of Venezuela who is proceeding without counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  Petitioner entered the United States in October 2023.  On December 26, 2025, petitioner was arrested and detained and has been in continuous detention since this date. This habeas action concerns petitioner's 2025 detention.  For the reasons that follow, the Court recommends granting the petition for a writ of habeas corpus.

I.    FACTUAL BACKGROUND

Petitioner is a 28 year old citizen and native of Venezuela.  (ECF No. 8-1 (Form I-213) at 1.)  On October 1, 2023, petitioner entered the United States without inspection and was

---

[1]  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

encountered by a border patrol agent with U.S. Customs and Border Protection.  (Id. at 2.) Petitioner was released.  (See ECF No. 8 at 1.)  Thereafter, petitioner filed an application for asylum and withholding of removal with the immigration court. (ECF No. 1 at 5; 8-1 at 2.) Petitioner was provided a work permit and a Social Security card.  (ECF No. 1 at 6.)

Petitioner states he was detained in a county jail for two days for domestic violence.  (Id.) According to petitioner's Form I-213, petitioner was arrested on December 24, 2025 for two counts of battery, and the charges remain pending.  (ECF No. 8-2 at 2.)  Immigration officers encountered petitioner at the Broward County Jail on December 25, 2026, and they arrested and detained petitioner on December 26, 2026.  (Id., ECF No. 1 at 5.)

On April 7, 2026, an immigration judge held a hearing where petitioner was found removable under Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) (8 U.S.C. § 1182(a)(6)(A)(i)).  (ECF No. 8-2 at 1.)  Petitioner's applications for asylum, withholding of removal under INA § 241(b)(3), and withholding of removal under the Convention Against Torture were denied.  (Id.)  Petitioner was ordered removed to Venezuela; petitioner reserved his right to appeal.  (Id. at 3-4.)  Thus, petitioner is not yet subject to a final order of removal.  See 8 U.S.C. § 1231(a)(1)(B).

Petitioner was not provided a pre-deprivation hearing.  (ECF No. 1 at 10.)  Petitioner has been in continuous detention since December 26, 2025.  (Id. at 5.)

## II.    PROCEDURAL BACKGROUND

On April 6, 2026, petitioner filed his petition for writ of habeas corpus.  (ECF No. 1.)  On April 15, 2026, respondents timely filed a motion to dismiss the petition.  (ECF No. 8.)  Petitioner did not file a reply.  Briefing is now complete.

## III.   LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas

corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV.    DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention).  Because petitioner is proceeding pro se and pro se pleadings are liberally construed, the Court construes petitioner's claim as a Fifth Amendment due process claim challenging his 2025 detention, and not as a claim challenging his detention as prolonged.[2]  (See ECF No. 1 at 9-18.)  Respondents do not argue that petitioner is a flight risk or a danger to the community and instead argue that as an "applicant for admission," petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2)(A) and he is ineligible for a bond hearing.  (ECF No. 8 at 1-2.)  Respondents cite Avila v. Bondi, No. 25-3741, 2026 WL 819258 (8th Cir. Mar. 25, 2026) and Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026), in support of their position that § 1225(b)(2)(A) is applicable here.  (Id.)  Respondents also argue that petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress.  (Id. at 2.)  In the alternative, respondents request that the Court stay this matter pending resolution of Rodriguez v. Bostock, No. 25-6842 (9th Cir.).  (Id.)

### A.    Applicability of Section 1225 or Section 1226

This Court must first decide whether petitioner, who has lived in the United States since October 2023, is subject to discretionary release under § 1226(a), or whether petitioner is now subject to mandatory detention under § 1225(b)(2)(A), as respondents argue.[3]

---

[2] Respondents do not focus on prolonged detention in their motion.  (See ECF No. 8.)
[3] Respondents do not contend that petitioner is subject to mandatory detention under 8 U.S.C.

3

8 U.S.C. § 1225(b)(2) mandates detention during removal proceedings for applicants "seeking admission" and does not provide for a bond hearing.  8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022).  Under § 1226(a), the government makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding."  Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)).  Section 1226(a) provides "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change."  Id. at 1202.  Therefore, "[i]f the noncitizen is detained under section 1226(a), she is entitled to a bond hearing."  Labrador-Prato v. Noem, 2025 WL 3458802, at *3 (E.D. Cal. Dec. 2, 2025) (citing Jennings v. Rodriguez, 583 U.S. 281, 306 (2018)).  Respondents contend § 1225(b)(2)(A) applies because petitioner is an "applicant for admission" and therefore subject to mandatory detention.  (ECF No. 8 at 1-2.)

The Court concludes that § 1226(a) applies to petitioner.  First, petitioner was released by immigration authorities sometime in 2023.  (See ECF No. 8 at 1, 8-1 at 2.)  Respondents do not dispute this fact.  (See ECF No. 8.)

Second, this Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting respondent's new interpretation[4] of Sections 1225 and 1226.  See Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting cases rejecting the government's assertion that § 1225 empowers DHS to arrest

§ 1226(c).  (See ECF No. 8.)

[4] Until DHS changed its policy in July 2025, the Government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.  See Rodriguez Diaz, 53 F.4th at 1196.

and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals'] construction of the INA is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases)); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at 3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

"These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  By contrast, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).  This Court incorporates and adopts the thorough and persuasive reasoning of the district court in Lepe, 2025 WL 2716910, at *3-9.

Further, respondents' reliance on Buenrostro-Mendez, 166 F.4th 494 and Avila, 2026 WL 819258, is unavailing.  This Court does not find Buenrostro-Mendez or Avila to be persuasive, and instead finds the analysis in Castañon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060-62 (7th Cir. 2025), and Barbosa da Cunha v. Freden, No. 25-3141, 2026 WL 1146044 (2d Cir. Apr. 28, 2026), to be more persuasive.  See also Gurvinder Singh v. Chestnut, 2026 WL 413839 (E.D. Cal. Feb. 14, 2026); Singh v. Baltazar, 2026 WL 352870, at *3-6 (D. Colo. Feb. 9,

2026) (rejecting the Buenrostro majority in its interpretation of § 1225 as nonbinding and highlighting the Seventh Circuit Court of Appeals' disagreement with the Buenrostro majority) (citing Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1052 (7th Cir. 2025)); Tomas Nicolas v. Warden, 2026 WL 364399, at *3 n.3 (S.D. Ind. Feb. 10, 2026) (disagreeing with Buenrostro majority and declining to follow); Chachipanta Cando v. Bondi, 2026 WL 357551, at *5 n.6 (D. Neb. Feb. 9, 2026) (same); Aroca v. Mason, 2026 WL 357872, at *15 n.40 (S.D. W.Va. Feb. 9, 2026) (same).  As the Second Circuit explained in Barbosa da Cunha:

> Today, although we part ways with two other circuits that have addressed this question, we join the overwhelming majority of federal judges across the Nation to consider it and conclude that the government's novel interpretation of the immigration statutes defies their plain text. That text makes clear that Section 1226(a) governs detention of noncitizens like Petitioner. Section 1225(b)(2)(A) does not apply to such noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter.
>
> This result is dictated by the plain text of these provisions, and further confirmed by the statute's context, structure, history, and purpose. It likewise comports with the Supreme Court's established understanding of Sections 1225 and 1226. It reflects Executive Branch practice over thirty years and across five Presidential administrations. Moreover, it explains why Congress has never challenged that settled practice despite making numerous amendments to the immigration laws.

Barbosa da Cunha v. Freden, 2026 WL 1146044 at *2.  In any event, neither Buenrostro-Mendez nor Avila are binding on this Court.

Following the majority of courts, this Court also rejects the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) and their contention that petitioner is an "applicant for admission" subject to § 1225(b)(2).  This Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because petitioner was previously released by immigration authorities, he has resided in this country for over two years since his release in 2023, and petitioner's December 2025 arrest and detention were not upon his arrival to the United States.  "Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention."  Jennings, 583 U.S. at 306 (citing 8 CFR §§ 236.1(d)(1)).  If, at this hearing, the detainee demonstrates that he or she is not "a threat to national security, a

6

danger to the community at large, likely to abscond, or otherwise a poor bail risk," the immigration judge will order his or her release.  Rodriguez Diaz v. Garland, 53 F. 4th at 1197 (citing Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).  As such, petitioner should have been provided a bond hearing before his 2025 detention.

### B.    Due Process Claim

Liberally construed, petitioner argues he has a fundamental liberty interest in freedom from imprisonment pursuant to the Fifth Amendment, and has a liberty interest in not being incarcerated after prior release without pre-custodial hearing.  (See ECF No. 1 at 7, 12.) Respondents argue petitioner's due process claims fail because petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress. (ECF No. 8 at 2.)  Respondents' arguments do not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]" Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  Foucha v. Louisiana, 504 U.S. 71, 80 (1992).  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas, 533 U.S. at 693.  "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary."  Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps:  the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution."  Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).  The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint.

7

Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Here, petitioner's initial encounter and subsequent release in 2023 are similar because it allowed petitioner to live in the United States free of custody for over two years. Such time allowed petitioner to form "enduring attachments of normal life." Morrissey, 408 U.S. at 482. Petitioner obtained work authorization and worked at a company called "Two Brothers," lived with his wife and family, and was a member of his church. (ECF No. 1 at 6, 8.) In light of all of the foregoing, the Court finds that petitioner's prior release and time out of custody created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk and did not pose a danger to the community. See Perry v. Sindermann, 408 U.S. 593, 601-03

(1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest); F.M.V., 2025 WL 3083934 at *4-5; see Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).  In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."  Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted).  Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.  Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention.  "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").  For over two years, petitioner was free from custody before his December 2025 detention.  Petitioner obtained work authorization, worked and lived with his wife and family.  (ECF No. 1 at 6, 8.)  The duration of his conditional release elevates and underscores his interest in liberty.  See Pinchi v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the

9

high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Though Respondents note that petitioner is facing battery charges, Respondents do not contend that petitioner is subject to mandatory detention under § 1226(c) for any criminal offenses. (See ECF No. 8.) In addition, the immigration judge did not base the order of removal on the pending battery charges, and there is no mention of any criminal issues, including any charges, in the immigration judge's order. (See ECF No. 8-2.) Here, petitioner has been detained since December 26, 2025, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. No neutral arbiter has determined whether petitioner is a flight risk or a danger to the community.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. In addition, here, the government's interest is even lower because petitioner was previously released by immigration officials in 2023, and he lived in the country for over two years on release. See Pinchi, 2025 WL 1853763, at *2.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained. "An essential principle of due process is that a deprivation of

10

life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner is entitled to relief on his due process claim.

## V.  MOTION FOR APPOINTMENT OF COUNSEL

Petitioner filed a motion for appointment of counsel. (ECF No. 3.) There currently exists no absolute right to appointment of counsel in habeas proceedings. See Nevius v. Sumner, 105 F.3d 453, 460 (9th Cir. 1996). Under 18 U.S.C. § 3006A, the court can appoint counsel at any stage of the case "if the interests of justice so require." See Rule 8(c), Fed. R. Governing § 2254 Cases. Because the Court recommends that the petition be granted, petitioner's motion for appointment of counsel is denied.

## VI.  RESPONDENTS' REQUEST TO STAY

Respondents' alternative request that this matter be stayed pending a ruling by the Ninth Circuit in Rodriguez v. Bostock, No. 25-6842 (9th Cir.) should be denied because a stay is not in the interests of petitioner, who has been detained since December 26, 2025, and because a stay would not promote the efficient use of scarce judicial resources in a district with some of the highest caseloads in the country. A stay would put a further strain on limited judicial resources.

## VII.  RESPONDENTS' MOTION TO DISMISS

For the reasons set forth above, respondents' motion to dismiss (ECF No. 8) should be denied.

## VIII.    CONCLUSION

In summary, the Court recommends that the petition for writ of habeas corpus be granted on petitioner's due process claim challenging his December 2025 detention.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2.  Respondents' motion to dismiss (ECF No. 8) be DENIED.

3.  Respondents be ordered to provide petitioner with a bond hearing before an immigration judge/neutral decisionmaker within **seven (7) days** of the adoption of these findings and recommendations where respondents bear the burden of establishing by clear and convincing evidence that petitioner poses a danger to the community or a risk of flight to justify his continued detention.

4.  Given petitioner's pro se status, respondents be directed to file, within **seven days** of the adoption of these findings and recommendations, a status report addressing petitioner's status.

5.  The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 6, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/camp2596.157.2241.imm